Filed 8/6/26  Gutierrez v. City of Imperial CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LAURA GUTIERREZ, | D086234 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. ECU003168) |
| CITY OF IMPERIAL, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Imperial County, Jeffrey B. Jones, Judge.  Affirmed.

Kahana & Feld, Kevin L. Borgen and Donald L. Hall III for Defendant and Appellant.

Rosenberg Law and Alexander Rosenberg for Plaintiff and Respondent.

The City of Imperial (the City) appeals an order denying its special motion to strike brought under the anti-SLAPP statute (Code Civ. Proc.,[1]

---

[1]     Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure. " 'SLAPP' is an acronym for 'strategic lawsuit against public participation.' " (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 381, fn. 1 (*Baral*).)  The anti-SLAPP statute sets forth the standards and the

§ 425.16) in the lawsuit filed by Laura Gutierrez alleging that the City wrongfully terminated her employment. We conclude that the trial court properly determined that the special motion to strike lacked merit, and we accordingly affirm the trial court's order denying the motion.

I.

FACTUAL AND PROCEDURAL BACKGROUND

Gutierrez worked as the Administrative Services Director for the City. In that role, Gutierrez was responsible for directing the operation of the City's finance department, including balancing the books at the end of each month.

In late August 2022, an outside auditor brought to the attention of the city manager, Dennis Morita, that Gutierrez had not taken action to reconcile an entry for $326,000 of unallocated funds in the City's accounting ledger. It also came to Morita's attention that, allegedly, Gutierrez had not taken proper steps in response to a May 2022 warning letter from Caltrans. In that letter, Caltrans stated that the City had not yet submitted a required audit report needed to ensure the City's continued receipt of public funds.

Morita put Gutierrez on paid administrative leave on September 6, 2022. Subsequently, on September 30, 2022, Morita issued a notice to Gutierrez that he was recommending the City terminate her employment. On October 28, 2022, after receiving a response from Gutierrez, Morita issued a notice to Gutierrez terminating her employment. The reason for the termination was as follows: "1. Flat refusal to follow a supervisor's instructions. Your failure to perform the basic and essential functions of your position . . . amount to a refusal to follow your supervisor's instructions. [¶]

procedure for striking "meritless claims arising from protected activity." (*Id.* at p. 384, italics omitted.)

2

2.  Violation of the laws of the State while on duty. . . .  [Y]our failure to perform your job violated laws, rules and/or regulations which carry significant exposure and severe consequences to the City."[2]

Gutierrez appealed her termination to the City's Personnel Commission, which upheld the termination on November 10, 2022.  Gutierrez then appealed to the City Council.  Gutierrez asked the City Council for "compensation" for "damages," but not reinstatement, as she had found new employment.  On June 15, 2023, the City Council upheld the termination and denied the request for compensation.

Gutierrez filed a lawsuit against the City on October 10, 2023.  Her complaint alleged three causes of action:  (1) wrongful termination; (2) violation of the California Public Records Act (Gov. Code, § 7920.000 et seq.); and (3) violation of the Ralph M. Brown Act (*id.*, § 54950 et seq.).  The trial court granted judgment on the pleadings, with leave to amend only for the wrongful termination cause of action.

Gutierrez's first amended complaint (FAC), filed on October 7, 2024, contained a single cause of action for wrongful termination.  After a lengthy section setting forth the relevant factual background, the FAC alleged that the City had wrongfully terminated Gutierrez by violating provisions of the personnel policy that allegedly governed Gutierrez's employment.[3]

---

[2]     On November 2, 2022, the City Council took action on the unallocated funds in its accounting ledger by ordering that they "be zeroed out" and that such a fund should not be used in such a manner in the future except as approved by the city manager.  The City Council further ordered a complete forensic review of the matter.

[3]     The FAC alleges that the policies governing Gutierrez's employment were contained in the Management Supervisory Professional Confidential Bargaining Agreement and the City of Imperial 1984 Personnel Policies.

Specifically, the FAC alleged that the City did not follow the three-step progressive disciplinary policy that Gutierrez contended was applicable. As alleged in the FAC, under that policy the employee is (1) first given a verbal and written warning with no penalty; (2) next given a written warning with a suspension or other penalty; and (3) finally issued a written report resulting in termination. The FAC identified several specific provisions in the progressive discipline policy, and it alleged that the City failed to comply with them.[4]

On December 10, 2024, the City filed a special motion to strike the FAC under the anti-SLAPP statute. In the same notice of motion, supported by the same memorandum of points and authorities, the City moved, in the alternative, for judgment on the pleadings.

The trial court denied the special motion to strike. As it explained, the cause of action for wrongful termination incorporated the 51 preceding paragraphs of the complaint, which included "allegations of plainly protected activity, such as instituting an investigation into the handling of public funds . . . . However, these allegations would appear to be incidental and collateral to [Gutierrez's] claim of wrongful termination, which is based on allegations that [the City] failed to follow certain required procedures in the termination process. . . . [¶] It thus appears that [the City] has failed to meet its burden as to the first 'prong' of the analysis – that of showing that the

---

[4] Among other things, according to the FAC, the applicable personnel policy allows the City to proceed directly to the third step when there has been "(a) Flat refusal to follow a supervisor's instructions," and "(b) Violation of the laws of the State while on duty such as intoxication, drugs, theft, etc." Although the City stated that it was terminating Gutierrez on both of those grounds, the FAC alleges that at no time "did [Gutierrez] flat[ly] refuse to follow any of her supervisor's instructions, nor did she violate any State laws while on duty to warrant an exception . . . , requiring the third step only."

4

claim is 'based' on protected activity.  Fairly read, [Gutierrez's] claim is based on a failure to follow the required procedures."

The trial court also denied the motion for judgment on the pleadings. As it explained, the FAC stated a claim for wrongful termination based on the allegation that Gutierrez was denied procedural due process when the City failed to follow the applicable " 'progressive discipline' " policy.

The City appeals from the order denying the special motion to strike.[5]

## II.
## DISCUSSION

### A.  *The Anti-SLAPP Statute*

We begin by setting out the general principles applicable to special motions to strike brought under the anti-SLAPP statute.  "The anti-SLAPP statute is 'designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern.  [Citations.]  To that end, the statute authorizes a special motion to strike a claim "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue."  (§ 425.16, subd. (b)(1).)'  [Citation.]  [¶]  Litigation of an anti-SLAPP motion involves a two-step process.  First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected

---

[5]     The City acknowledges that an order denying a motion for judgment on the pleadings is not appealable prior to a final judgment.  However, the City asks us to review that ruling as part of our evaluation of the merits of Gutierrez's lawsuit during the second step of our analysis of the special motion to strike.  (§ 425.16, subd. (b)(1).)  Because we reach only the first step in our analysis of the special motion to strike, we have no occasion to consider the City's request that we review the trial court's order denying judgment on the pleadings.

activity in which the defendant has engaged.' [Citation.] Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit." ' [Citation.] If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1008–1009 (*Bonni*).) In ruling on a special motion to strike, "the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).)

The anti-SLAPP statute identifies four categories of protected activity: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(1)–(4).)

"Analysis of an anti-SLAPP motion is not confined to evaluating whether an *entire* cause of action, as pleaded by the plaintiff, arises from protected activity or has merit. Instead, courts should analyze each claim for relief—each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected and, if so, whether the claim they give rise to has the requisite degree of merit to survive the motion." (*Bonni, supra*, 11 Cal.5th at p. 1010, italics added.)

6

A trial court's order denying a special motion to strike is subject to a de novo standard of review. (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.) " '[O]ur job is to review the trial court's ruling, not its reasoning.' " (*Trinity Risk Management, LLC v. Simplified Labor Staffing Solutions, Inc.* (2021) 59 Cal.App.5th 995, 1002.)

B. *The Wrongful Termination Cause of Action Does Not Arise From Protected Activity*

We begin with the first step in the anti-SLAPP analysis. "At this first step, courts are to 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' [Citation.] The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." (*Bonni, supra,* 11 Cal.5th at p. 1009.)

As we have noted, the FAC contains a single cause of action for wrongful termination. According to the City, in that cause of action, "[t]he FAC seeks relief based on protected communications and petitioning activity of City personnel in relation to official City proceedings, including allegedly accusing Gutierrez of fraud, initiating a fraud investigation, disciplinary proceedings, and disciplinary appeal proceedings." Based on these allegations, the City takes the position that "the entire FAC should be stricken pursuant to §425.16."

In analyzing whether the City has met its burden to show that the wrongful termination cause of action arises from protected activity, we will first consider the FAC's allegations describing an accusation of fraud against Gutierrez and the initiation of a fraud investigation. We will then consider the allegations concerning the proceedings that resulted in Guttierez's termination.

7

1. *The FAC's Allegations That City Personnel Accused Her of Fraud and Initiated an Investigation*

With respect to the City's contention that Gutierrez's wrongful termination claim is based on the purportedly protected activities of making fraud accusations and conducting a fraud investigation by City personnel, the City points to several allegations in the FAC. Specifically, in its "Factual Background" section, the FAC alleges that when putting Gutierrez on administrative leave, Morita and the assistant city manager falsely claimed that Guttierrez committed fraud and stated that they were going to conduct an investigation.[6] Subsequently, the City Council authorized a complete forensic review regarding the unallocated funds account. Further, as alleged within the wrongful termination cause of action, when the Personnel Committee reviewed Gutierrez's appeal of her termination, it "was biased" against her after "having been approached by her supervisors [Morita and the assistant city manager] alleging, *she had committed fraud.*" (Italics added.) As a result of that bias, Gutierrez alleges that the Personnel

---

[6]    Paragraph 28 states that "[City Manager] Dennis Morita and [Assistant City Manager] Alexis Brown conspired and colluded to create a false narrative that Gutierrez *had committed fraud* when Gutierrez informed them that she was in the process of reconciling the Unallocated Fund . . . ledger that had not been reconciled for several months." (Capitalization omitted, italics added.) Paragraph 30 states, "Instead of being allowed to finish reconciling the ledger, on the morning of September 6, 2022, Gutierrez was called into the office by . . . Morita and . . . Brown and informed that she was being placed on paid administrative leave *to conduct a fraud investigation* effective immediately." (Capitalization omitted, italics added.) Paragraph 35 states that "[t]he acts alleged in this Complaint by the agents of [the City] to prevent Gutierrez from her top salary *by accusing her of fraud*, placing her on administrative leave and terminating her employment were all performed without merit in violation of" the allegedly applicable personnel policies. (Capitalization omitted, italics added.)

8

Committee did not conduct a proper review at the second step of the progressive discipline process.[7]

The City argues that because the FAC alleges that Gutierrez's supervisors accused her of fraud and authorized an investigation, the wrongful termination cause of action is based on protected "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest" (§ 425.16, subd. (e)(4)) and on a protected "written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law" (*id.*, subd. (e)(2)).  As we will explain, that argument fails because the wrongful termination cause of action is not based on the allegation that Gutierrez's supervisors accused her of fraud and authorized an investigation.

"Assertions that are 'merely incidental' or 'collateral' are not subject to section 425.16.  [Citations.]  Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Baral, supra*, 1 Cal.5th at p. 394.)  There is a "distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity or provide evidentiary support for the claim." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1064 (*Park*).)  A court must therefore

---

7    In paragraph 60, after stating that the applicable personnel policy provides that "the Personnel Committee will review all disciplinary action taken from Step 2 against a city employee by a supervisor," the FAC alleges that "the Personnel Committee was biased after having been approached by [Gutierrez's] supervisors . . . Morita and . . . Brown alleging, she had committed fraud," and thus "did not objectively review all disciplinary action taken from Step 2 against her."

"consider whether . . . allegations supply the elements of [the alleged] claim or merely provide context." (*Bonni, supra*, 11 Cal.5th at p. 1012.)

Here, the wrongful termination cause of action is based on the theory that (1) a three-step progressive discipline policy applied to Gutierrez's employment, but (2) the City terminated Gutierrez without following that policy. Establishing liability on that basis does not depend on the allegation that Gutierrez's supervisors accused her of fraud during the process of terminating her employment or that the City instituted a forensic review. At most, the discussion of the fraud accusation and subsequent investigation provide context regarding the circumstances and timing of Gutierrez's termination. Therefore, to the extent the City premised its anti-SLAPP motion on the FAC's allegations that Gutierrez's supervisors accused her of fraud and authorized an investigation, the motion was without merit.

2. *Allegations Regarding Conduct and Communications by the City's Decisionmakers During the Proceedings Related to Gutierrez's Termination*

Next, we consider the City's reliance on the FAC's allegations that describe the conduct and communications by City decisionmakers during the proceedings to terminate Gutierrez's employment.

First, the City points to the FAC's descriptions of Morita's "conduct and communications in connection with disciplinary proceedings against Gutierrez." Specifically, during the process of terminating Gutierrez's employment, Morita expressed his view that Gutierrez's conduct "warrant[ed] immediate discharge instead of progressive discipline." The City argues that "[a]s distinct from the City's termination itself, Morita's conduct and communications in connection with disciplinary proceedings against Gutierrez are protected activities under §425.16(e)(1, 2 & 4)."

10

Next, the City points to the FAC's allegations about the involvement by the members of the Personnel Committee and the City Council during proceedings related both to the termination of Gutierrez's employment and the resolution of the unallocated funds account. According to the City, the committee members' and council members' "involvement in hearing, processing, and deciding these matters in City proceedings is protected activity under §425.16(e)(1, 2 & 4) and the resolution proceedings at a City Council meeting [concerning the unallocated funds] were also protected under §425.16(e)(3)."

The City's reliance on these allegations to support its anti-SLAPP motion is unavailing because the City fails to distinguish between the City's act of terminating Gutierrez's employment, on the one hand, and the activity leading up to and implementing that decision, on the other. Case law requires that we make a "distinction between a government entity's decisions and the individual speech or petitioning that may contribute to them." (*Park, supra*, 2 Cal.5th at p. 1071.) "[A] claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity. Rather, a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Id.* at p. 1060.) "Government decisions are frequently 'arrived at after discussion and a vote at a public meeting.' [Citation.] Failing to distinguish between the challenged decisions and the speech that leads to them or thereafter expresses them 'would chill the resort to legitimate judicial oversight over potential abuses of legislative and administrative power.' " (*Id.* at p. 1067.) As our Supreme Court observed, "none of the core

11

purposes the Legislature sought to promote when enacting the anti-SLAPP statute are furthered by ignoring the distinction between a government entity's decisions and the individual speech or petitioning that may contribute to them." (*Id.* at p. 1071.)

As an example of this distinction, in *Park*, a professor sued the university, alleging that its decision to deny him tenure was based on national origin discrimination. (*Park, supra*, 2 Cal.5th at p. 1061.) The university argued that because the professor's suit "arose from its decision to deny him tenure and the numerous communications that led up to and followed that decision, these communications were protected activities." (*Ibid.*) Our Supreme Court rejected that contention, explaining that "[t]he elements of [the professor's] claim . . . depend not on the grievance proceeding, any statements, or any specific evaluations of him in the tenure process, but only on the denial of tenure itself and whether the motive for that action was impermissible. The tenure decision may have been communicated orally or in writing, but that communication does not convert [the professor's] suit to one arising from such speech." (*Id.* at p. 1068.)

The same analysis applies here. During the proceedings to terminate Gutierrez's employment, decisionmakers at the City made statements and engaged in conduct that might qualify as protected activities. Further, the FAC cites those activities as evidence that the City wrongfully terminated Gutierrez. However, "the wrong complained of" by Gutierrez is the termination itself, which is not a protected activity. (*Park, supra*, 2 Cal.5th at p. 1060.) Accordingly, the wrongful termination claim does not arise from protected activity. As the trial court properly concluded, the City failed to meet its burden on the first step of the analysis required by section 425.16, subdivision (b)(1).

## DISPOSITION

The order denying the City's special motion to strike is affirmed. Gutierrez shall recover her costs on appeal.

McCONNELL, P. J.

WE CONCUR:

DO, J.

BERMÚDEZ, J.